UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **GERTRUDE SAVOY** | **CASE NO. 2:17-CV-00897** |
| **VERSUS** | **JUDGE SUMMERHAYS** |
| **KROGER CO ET AL** | **MAGISTRATE JUDGE KAY** |

### REASONS FOR DECISION

Presently before the Court are four motions for summary judgment: (1) Motion for Summary Judgment [doc. 36] filed by Inteplast Group Corporation ("Inteplast") with regard to the product liability claims; (2) Motion for Summary Judgment [doc. 62] filed by Inteplast and The Kroger Company ("Kroger") on the issue of medical causation; (3) Plaintiff's Motion for Partial Summary Judgment on Medical Causation [doc. 64] filed by Gertrude Savoy; and (4) Motion for Summary Judgment [doc. 65] filed by Kroger. For reasons explained below, the court **GRANTS** Inteplast's Motion for Summary Judgment with respect to Plaintiff's product liability claims [doc. 36]. The remaining motions [docs. 62, 64, and 65] are **DENIED**.

### I.
#### BACKGROUND

On March 3, 2016, Plaintiff was shopping at Kroger and was at a checkout stand operated by Larissa Perez, a Kroger cashier.[1] Perez bagged the groceries.[2] Plaintiff then attempted to lift a bag containing two 59-ounce bottles of Gold Peak® tea from the carousel to her shopping cart.[3] As

---

[1] First Supplemental and Amending Petition for Damages, paragraph 8.
[2] Id.
[3] Id.

1

she attempted to lift the bag, the plastic bag tore causing the bottles of tea to fall on Plaintiff's right foot.[4] According to the undisputed facts, the bag was not "double bagged."[5] Plaintiff contends that Kroger's employees took possession of the bag that failed,[6] but this bag involved has not been produced in discovery.[7] Plaintiff alleges that the impact of the bottles caused Complex Regional Pain Syndrome -- also known as Reflex Sympathetic Dystrophy ("RSD") -- in her foot.[8] RSD apparently is an incurable nerve condition.[9] Plaintiff subsequently filed suit in the 14th Judicial Court in Calcasieu Parish against Kroger, Perez, and Inteplast, the manufacturer of the plastic bag. Inteplast removed the case to this court on July 11, 2017, based upon diversity.

In her complaint, Plaintiff asserts negligence claims against Kroger and Perez. Plaintiff also asserts product liability claims against Inteplast under the Louisiana Product Liability Act. Inteplast, Kroger and Plaintiff have now filed motions for summary judgment. Inteplast contends that there is no evidence establishing that the bag in question was its product. It also asserts that Plaintiff cannot establish all of the elements of a product liability claim as a matter of law. Kroger and Inteplast challenge Plaintiff's ability to prove medical causation and breach of duty. Finally, Plaintiff seeks summary judgment establishing medical causation as a matter of law. Trial of this matter is set for January 27, 2020.

---

[4] Id.
[5] Statement of Undisputed Facts, Doc. 85-1.
[6] Deposition of Gertrude Savoy, Exhibit I to Document 85, p. 49, line 4.
[7] Statement of Undisputed Facts, Doc. 85-1.
[8] Pretrial Statement, Document 42, page 2.
[9] Id.

# II.
# LAW

### A.     Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010). As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.

*Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party). "Credibility determinations are not part of the summary judgment analysis." *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d

451, 458 (5th Cir. 2002). Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).

**B. Application of Louisiana Law.**

In a diversity case such as this one, the Court applies state substantive law. *Moore v. State Farm Fire & Cas. Co.,* 556 F.3d 264, 269 (5th Cir. 2009); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The parties do not dispute that Louisiana law applies to this case.

### III.
### LEGAL ANALYSIS

**A. Claims Under the Louisiana Products Liability Act.**

Plaintiff alleges that Inteplast is liable for her damages because it manufactured the plastic bag that failed and allegedly caused injuries to her foot. The Louisiana Products Liability Act ("LPLA") establishes the exclusive grounds for recovery against manufacturers for damage caused by their products.[10] To hold a manufacturer liable under the Louisiana Products Liability Act, a plaintiff must prove that (1) the product manufactured by the defendant possesses a characteristic which makes it unreasonably dangerous, (2) that the characteristic which makes the product unreasonably dangerous existed when it left the control of defendant, (3) that the characteristic which makes the product unreasonably dangerous proximately caused the plaintiff's damages, and (4) that the damage arose from a reasonably anticipated use of the product.[11] Louisiana law does not allow a fact finder to presume an unreasonably dangerous design solely from the fact that an

---
[10] LSA-R.S. 9:2800.52; *Simon v. American Crescent Elevator Company*, 99-2058 (La. App. 4 Cir. 4/26/20); 767 So.2d 64, 68.
[11] *Wicker v. Ford Motor Company*, 67 F. Supp. 2d 623, 624 (E.D. La. 1999).

4

incident occurred.[12] The mere fact that an accident occurred is not sufficient to establish that a product is defective or unreasonably dangerous.[13] Plaintiff must prove each element of a claim under the LPLA by a preponderance of the evidence.[14] Plaintiff must show that the bag at issue was unreasonably dangerous due to (1) its design; (2) its construction or composition; (3) the lack of an adequate warning; or (4) its failure to conform to an express warranty.[15] The parties have not asserted the existence of any express warranty so the Court will not address the fourth provision.

### 1. Identity of The Bag That Failed

Inteplast first alleges that there is no evidence that the bag that allegedly injured her was manufactured by Inteplast because neither Kroger nor Plaintiff has located and produced the bag involved in the accident. Plaintiff, however, points to a contract between Kroger and Inteplast for the manufacture and supply of Inteplast plastic bags to Kroger.[16] In addition, Inteplast's representative, Snehal Desai, confirmed that this (or a similar) vendor agreement was in place at the time of the incident and that he was not aware of any other manufacturer who supplied bags to Kroger.[17] This summary judgment evidence is sufficient to create a genuine question of material fact as to whether Inteplast manufactured the bag in question.

### 2. Defect in Design.

Under the LPLA,

> A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:
>
> (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and

---

[12] *McCarthy v. Danek Med., Inc.*, 65 F. Supp. 2d 410, 412 (E.D. La. 1999).
[13] *Guidry v. Aventis Pharmaceuticals, Inc.*, 418 F. Supp.2d 835 (M.D. La. 2006); *Morris v. Unites Services Auto. Assn*, 756 So.2d 549, 558 (La.App. 2nd Cir.2/18/00).
[14] *Ashley v. General Motors Corp*, 666 So.2d 1320 (La.App. 2 Cir.1996).
[15] *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254 (5th Cir. 2002).
[16] The Vendor Agreement for Sourcing of Plastic and Paper Products between Kroger and Inteplast, Exhibit A to Document 84.
[17] Exhibit B to Document 84.

> (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.[18]

This prong of the LPLA requires proof of an alternative design that would have prevented a plaintiff's injuries. Applied here, that means an alternative bag design that would have prevented Ms. Savoy's injuries. Inteplast argues that Plaintiff cannot establish liability under this provision because she has not designated an expert to testify on this issue. Plaintiff responds that, in *Malbrough v. Crown Equip. Corp.*, the Fifth Circuit rejected a *per se* rule requiring expert testimony to prove the existence of an alternative design.[19]

In *Malbrough*, the plaintiff was injured while operating a "stand-up" forklift at the Wal-Mart warehouse distribution center where she worked.[20] The plaintiff attempted to avoid a collision with another forklift by applying her brakes, which caused her left foot to swing out of the unenclosed operator compartment. As a result, her foot was crushed when the two forklifts collided. The plaintiff sued the manufacturer under the LPLA, claiming that the lack of a door to the operator compartment of the stand-up forklift constitutes a design defect. She intended to present expert testimony on the design defect issue at trial, but the district court granted the manufacturer's motion *in limine* to exclude her expert witness. The manufacturer then argued that the lack of an expert witness prevented plaintiff from proving her case. The Fifth Circuit concluded that the trier-of-fact was capable of understanding whether adding a door to the forklift cab would have prevented the incident without the assistance of an expert. According to the *Malbrough* court,

---

[18] LSA-R.S. 9:2800.56.
[19] *Malbrough v. Crown Equip. Corp.*, 392 F.3d 135 (5th Cir. 2004).
[20] *Id.*

6

"there may be cases in which the judge or jury, by relying on background knowledge and common sense, can fill in the gaps in the plaintiff's case and thus undertake the utility balancing required by the LPLA without the aid of expert testimony."[21]

Plaintiff argues that the same rationale applies to her case. The flaw in Plaintiff's comparison is that, in *Malbrough*, the plaintiff clearly asserted an alternative design, i.e. a forklift cab that included a door. Here, Plaintiff has not even suggested, much less submitted any evidence of, an alternative design that would have prevented the incident. Accordingly, Plaintiff has failed to meet her burden of establishing this essential element of her claim that the Inteplast bag contained a design defect.

### 3. Unreasonably Dangerous in Construction or Composition.

Under the LPLA,

> [a] product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer.[22]

Inteplast argues that Plaintiff cannot prove the essential elements of this claim because the bag at issue has not been located and thus cannot be inspected for defects in its materials or its construction. The Court agrees. Whether or not the bag's materials or construction was defective is product specific and cannot be determined without inspecting the bag in question. Inteplast never had possession of that bag after the incident in question, and neither Plaintiff nor Kroger has produced the bag that injured Plaintiff.

Plaintiff further argues that the fact of the bag's failure, standing alone, is sufficient evidence of a construction defect. But Louisiana law is clear that a construction defect cannot be

---

[21] *Id.*, 392 F.3d at 137.
[22] LSA-R.S. 9:2800.55.

7

inferred based solely on the fact that an accident occurred.[23] While Plaintiff has not specifically urged the doctrine of *res ipsa loquitur*, that doctrine is the only support for Plaintiff's position that the fact of the accident alone establishes evidence of a defect. The Fifth Circuit has recognized that *res ipsa loquitur* generally applies to Louisiana products liability cases:

> The Louisiana Supreme Court explains the principle of *res ipsa loquitur* as "a rule of circumstantial evidence that infers negligence on the part of defendants because the facts of the case indicate that the negligence of the defendants is the probable cause of the accident, in the absence of other equally probable explanations offered by credible witnesses." *Montgomery v. Opelousas Gen. Hosp.*, 540 So.2d 312 (La. 1989) (citing *Boudreaux v. Am. Ins. Co.*, 262 La. 721, 264 So.2d 621, 636 (1972)). However, because *res ipsa loquitur* is "a qualification of the general rule that negligence is not to be presumed," it "must be sparingly applied." *Spott v. Otis Elevator Co.*, 601 So.2d 1355, 1362 (La. 1992) (quoting *Day v. Nat'l U.S. Radiator Corp.*, 241 La. 288, 128 So.2d 660, 665 (1961)). *Res ipsa loquitur* is reserved for those circumstances that "are of such an unusual character as to justify, in the absence of other evidence bearing on the subject, the inference that the accident was due to the negligence of the one having control of the thing which caused the injury." *Lawson v. Mitsubishi Motor Sales of Am., Inc.*, 938 So.2d 35, 49 (La. 2006) (quoting *Larkin v. State Farm Mut. Auto. Ins. Co.*, 233 La. 544, 97 So.2d 389, 391 (La. 1957)).[24]

The court, however, also has recognized that *res ipsa loquitur* is not available in a products liability case where a plaintiff cannot exclude other potential causes of injury that do not relate to the defective construction of the product.[25] Here, Plaintiff has not excluded other potential causes of her injury because she has also alleged that Kroger and Perez negligently overfilled the bag with heavy items, that Kroger failed to implement adequate training and supervision, and that these negligent actions were a cause of her injuries. Accordingly, the doctrine of *res ipsa loquitur* is inapplicable to prove a defect in the construction of the bag that injured Plaintiff. Without that

---

[23] *Morris v. United Serves Auto. Assn.*, 756 So.2d 549, 558 (La.App. 2nd Cir. 2000).
[24] *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305 (5th Cir. 2017).
[25] *Id.* at 313; *Ayala v. Enerco Grp., Inc.*, 569 Fed.Appx. 241, 249-50.

8

presumption and without evidence of the bag that caused her injuries, Plaintiff cannot establish that the bag was unreasonably dangerous in construction or composition.

**4. Inadequate Warning.**

To prevail on an inadequate warning claim under the LPLA, Plaintiff must establish that "the product possessed a characteristic that may cause damage" at the time the product left Inteplast's control, and that Inteplast "failed to use reasonable care to provide an adequate warning of such characteristic and its dangers to users and handlers of the product."[26] An "adequate warning" is "a warning or instruction that would lead an ordinary reasonable user or handler of a product to contemplate the danger in using or handling the product and either to decline to use or handle the product or, if possible, to use or handle the product in such a manner as to avoid the danger for which the claim is made." La. R.S. 9:2800.53(9). Plaintiff must also establish that the Inteplast's inadequate warning with respect to this characteristic proximately caused her injury. In other words, Plaintiff must establish some reasonable connection between this potentially dangerous characteristic and her injury.[27] A manufacturer's duty to warn, however, does not include warnings concerning dangers that are, or should be, "obvious" to an ordinary user.[28]

Here, it is not clear whether Plaintiff is framing her claim as a failure to warn that Inteplast's bags may generally fail and cause damage regardless of the weight of the grocery items in the bag, or that Inteplast failed to provide a more specific warning of bag failure if too many heavy items are placed in its bags. Regardless of how she frames her failure-to-warn claim, this claim fails for at least three reasons. First, Plaintiff cannot rest on a "mere allegation of inadequacy" to survive

---

[26] *Colbert v. Sonic Restaurants, Inc.*, 741 F. Supp. 2d 764, 770 (W.D. La. 2010), citing *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).
[27] *Jack v. Alberto Culver USA, Inc.*, 949 So. 2d 1256 (La. 2007).
[28] *Colbert*, 741 F.Supp.2d at 770, citing *Ballam v. Seibels Bruce Ins. Co.*, 712 So.2d 543, 550 (La.App. 4th Cir.1998); *Mallery v. Int'l Harvester Co.*, 690 So.2d 765, 768 (La. App. 3rd Cir.1996).

summary judgment but must instead offer *evidence* (not merely conclusory allegations) of what warning should have been provided and how this warning would have prevented her injuries.[29] Plaintiff points to no such evidence in the summary judgment record. To the contrary, when Plaintiff was questioned at her deposition about the information printed on the bag that failed, she stated that "[t]here was some writing on the bag, but I did not read it."[30] This admission shows that a written warning on the bag would have been futile because it would not have changed Plaintiff's actions and thus would not have prevented her injuries.[31] Plaintiff posits no evidence of any other alternative type of warning or instruction that would have prevented her injuries.[32]

Second, to demonstrate that the product in question has a potentially damage-causing characteristic, "a plaintiff must provide evidence about the 'cause, frequency, severity, or consequences' of the dangerous characteristic in question."[33] Here, Plaintiff has not come forward with evidence of a potentially damage-causing characteristic of Inteplast's bags that existed at the time the bags left Inteplast's control.[34] Plaintiff appears to base her inadequate warning claim on an alleged tendency for Inteplast bags to tear and fail. In that regard, she points to evidence of *four*

---

[29] *See Broussard v. Procter & Gamble Co.*, 463 F. Supp. 2d 596 (W.D. La. 2006); *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254 (5th Cir. 2002).
[30] Deposition of Gertrude Savoy, Exhibit I to Document 85, page 110, line 25 – page 110, line 1.
[31] Ordinarily, "where the manufacturer fails to give an adequate warning, a presumption arises that the user would have read and heeded such warnings" *unless* the evidence shows that the warning would have been futile. *Gauthier v. McDonough Power Equip., Inc.*, 608 So.2d 1086 (La.App. 3 Cir.1992). *See also Gauthier v. McDonough Power Equipment, Inc.*, 608 So.2d 1086 (La. App. 3rd Cir. 1992), citing *Safeco Insurance Co. v. Baker*, 515 So.2d 655 (La.App. 3rd Cir. 1987), *writ denied*, 519 So.2d 130 (La. 1988); *Hinson v. Techtronic Industries Outlets, Inc.*, 126 F. Supp. 3d 747 (W.D. La. 2015).
[32] *See Broussard*, 463 F.Supp.2d 596 (W.D. La. 2006) (adequacy of failure to warn claim under the LPLA "would still fail on summary judgment because [the plaintiffs] have failed to support their burden of proof as to the element of causation—that, but for the inadequate warning, Ms. Broussard would not have used the product at all or in the manner that she did, and thus would not have been injured.") (citing *Willett v. Baxter Int'l*, 929 F.2d 1094, 1098–99 (5th Cir.1991)); *Grenier v. Medical Engineering Corp.*, 243 F.3d 200, 205 (5th Cir. 2001).
[33] *See Stahl*, 283 F.3d 254, 264 (5th Cir. 2002) (quoting *Grenier*, 243 F.3d at 205); *see also Krummel v. Bombardier Corp.*, 206 F.3d 548, 552 (5th Cir. 2000) (inadequate warning claim requires a plaintiff to provide evidence of the probability or risk of injury from the allegedly damaging characteristic of the product).
[34] *Id.* ("To successfully maintain a failure-to-warn claim under the LPLA, a plaintiff must demonstrate that the product in question has a potentially damage-causing characteristic and that the manufacturer failed to use reasonable care to provide an adequate warning about this characteristic.").

other instances where Kroger bags tore, causing the items in the bag to fall to the ground.[35] Inteplast responds that these four incidents have to be viewed in the context of the total number of bags sold to Kroger: *9.7 billion* Inteplast bags between January 1, 2012 and December 31, 2018.[36] In contrast, the only evidence as far as the frequency, severity, or consequences of Inteplast bag failures is the four bag failure claims during this time period. This evidence is insufficient to create a genuine issue of material fact as to whether the Inteplast bags sold to Kroger were prone to failure.

Nor has Plaintiff come forward with evidence with respect to the "cause" of the bag failure that injured Plaintiff. The summary judgment evidence does not reveal whether the bag failure that injured Plaintiff resulted from a characteristic that existed when it left Inteplast's possession, or whether it resulted from how the bag was handled *after* it left Inteplast's possession. The bag that injured Plaintiff has never been produced through no fault of Inteplast, and thus is not available for the trier-of-fact to make any conclusions about the cause of the bag failure.[37] The only evidence of the cause of the bag's failure is deposition testimony from Plaintiff that the bag at issue contained two large containers of iced tea and that it ripped from the top of the bag and down the front panel of the bag where Kroger's logo was located.[38] In contrast, Inteplast's Director of Integrated Bagging Systems, Snehal Desai, testified that bag failures typically occur along the seams of the bag or at the handles.[39] There is no evidence in the summary judgment record that Plaintiff's bag split along one of its seams or at the handles. Considered in its entirety, this evidence

---

[35] Exhibits C, D, E and F to Document 84.
[36] Exhibit B to Document 65.
[37] Plaintiff has alleged that Kroger failed to retain the bag as well as photographs of the bag. Whether the bag was lost by Kroger or by Plaintiff, there is no dispute that Inteplast never had possession of the bag after the incident.
[38] Deposition of Gertrude Savoy, Exhibit I to Document 85, page 48, lines 17-18.
[39] Exhibit B to Document 84, deposition of Snehal Desai, page 59, lines 11-20.

is not sufficient to raise a genuine question of material fact as to the cause of the bag failure that injured Plaintiff.

Third, to the extent that Plaintiff bases her claim on the narrower ground that Inteplast did not provide an adequate warning that Inteplast's bags may fail if they are overloaded with heavy objects, this characteristic is too obvious to support an inadequate warning claim. Section 9:2800.57(B) of the LPLA provides that a product "is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product's characteristics." The obviousness of a potentially damage-causing characteristic is typically a question for the trier-of-fact. However, obviousness can be decided as a matter of law where no reasonable minds could disagree.[40] Here, as a matter of law, it would be obvious to "an ordinary user or handler of the product, with the ordinary knowledge common to the community" that a plastic grocery bag could rip or tear at some point if it is overloaded with heavy objects.

In sum, Plaintiff has not come forward with evidence that creates a genuine issue of material fact on each of the essential elements of her LPLA claims against Inteplast. Inteplast's Motion for Summary Judgment [doc. 36] is therefore GRANTED.

**B. Claims Against Kroger.**

Plaintiff alleges liability against Kroger based upon negligence. Louisiana jurisprudence dictates that ordinary negligence claims under La. Civ. Code art. 2315 are governed by a duty/risk analysis and an examination of the particular facts in question.[41] Plaintiff must prove (1) that the

---

[40] See *Colbert v. Sonic Restaurants, Inc.*, 741 F.Supp. 2nd 764 (W.D. La. 2010) (court concludes on summary judgment that the dangers of hot coffee are obvious); *Triche v. McDonald's Corporation*, 164 So.3d 253 (La.App. 5 Cir. 2014) (court finds McDonald's had no duty to provide warnings regarding the dangers of hot coffee); *Hines v. Remington Arms Co.*, 648 So.2d 331 (La. 1994) (finding no duty to warn where the dangers of gunpowder are well known and obvious).
[41] See *Bernard v. Ace Property & Casualty Ins. Co.* 257 So.3d 223, 227 (La.App. 3 Cir. 10/3/18); see also, *Berthiaume v. Gros*, 165 So.3d 1275 (La.App. 3 Cir. 6/3/15).

defendant had a duty to conform his conduct to a specific standard of care; (2) that the defendant failed to do so; (3) that the substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) that the conduct was a legal cause of the plaintiff's injuries; and (5) actual damages.[42] The "cause-in-fact" element of negligence is a "but for" inquiry which tests whether the accident would or would not have happened but for the defendant's substandard conduct.[43] Here, Plaintiff alleges that Kroger breached its duty in the following respects:

> a) In failing to determine the involved bags' safe loading capacity and/or characteristics and train its employees accordingly;
>
> b) In failing to determine the involved bags' safe loading capacity and/or characteristics and develop policies and procedures for use by its employees accordingly;
>
> c) In failing to secure from the bag manufacturer the bags' specifications and/or safe loading capacity and/or characteristics;
>
> d) In failing to implement its existing policy, procedure and/or guideline on safe bagging procedures;
>
> e) In failing to properly train its employees on safe bagging guidelines and procedures;
>
> f) In failing to supervise and/or manage Defendant DOE to ensure Doe understood and practiced safe bagging procedures;
>
> g) In negligently hiring Defendant DOE as a bagger and entrusting Defendant DOE with the responsibility for safe bagging procedures;
>
> h) In selecting plastic bags for use which were of poor quality and unsuitable for the involved use; and
>
> i) Any other acts of negligence which may be revealed through discovery, added as a negligence allegation in a Supplemental and Amending Petition for Damages, and proven at the trial of this case.[44]

---

[42] *Fowler v. Roberts*, 556 So.2d 1 (La. 1989).
[43] *Boykin v. Louisiana Transit Co.*, 707 So.2d 1225 (La. 1998).
[44] Petition for Damages filed by Gertrude Savoy, exhibit 1 to Document 1.

Kroger argues that Plaintiff cannot establish liability based upon the evidence submitted by Kroger regarding the capacity and characteristics of the bags used by Kroger. Specifically, Kroger asserts the Plaintiff cannot prove that Kroger/Perez negligently overpacked the plastic grocery bag with sufficient weight to cause it to tear and fail.

Turning to the summary judgment record, the bag supply contract between Kroger and Inteplast called for "T-shirt bags" manufactured to the design specifications as agreed to by Kroger and Inteplast.[45] Inteplast performs tests on the bags designed to the Kroger thickness (13.5 microns) by placing a thirteen to fifteen pound weight inside of the bag, lifting the bag and "jogging" it three to five times to check the bottom seal.[46] The Inteplast bags used by Kroger were randomly selected by Kroger's third-party auditor, Consumer Testing Laboratories, Inc., once a month to test the performance of the bags.[47] These randomly selected bags were "jog tested" with a weight of fifteen (15) pounds to ensure the bags would hold their seal during and after testing.[48] In contrast, the jugs of tea placed into the Inteplast bag have a combined weight of less than nine (9) pounds,[49] which is six pounds below the tested weight capacity of the Kroger bags. The Kroger bags provided by Inteplast at the time of the incident passed the test as administered by Kroger's Third-Party auditor.[50] Additionally, of the 9.7 Billion bags Inteplast has sold to Kroger between January 1, 2012 and December 31, 2018, Inteplast is only aware of four (4) incidents involving the failure of a Kroger bag.[51]

---

[45] Exhibit B to Document 65, Affidavit of Snehal Desai, p. 1.
[46] Id. at 2.
[47] Id.
[48] Exhibit C to Document 65, Consumer Testing Laboratories, Inc. Evaluation of Test Results, p. 4 ("Jog Testing" involves the shaking of the weight in the bag to simulate a "jogging" effect. This test in particular "jogs" the bag 35 times in 20 seconds using a 15 pound narrow profile weight.
[49] Statement of Uncontested Material Fact #8 to Kroger Motion for Summary Judgment.
[50] Exhibit C to Document 65.
[51] Exhibit B to Document 65.

14

The summary judgment evidence submitted by Kroger negates Plaintiff's allegations that the bag was overloaded based upon the weight of the items (two containers of iced tea) in comparison to the capacity of the bag. Plaintiff, however, has made additional allegations regarding training as well as proper bagging procedures.[52] While Plaintiff's allegations have focused on her theory that the bag could not hold the weight of the items, it is possible that some other aspect of the bagging process and how Kroger/Perez handled the bag in question caused the Plaintiff's injury. Accordingly, because there is a genuine question of material fact as to Kroger's liability, Kroger's motion for summary judgment is denied.

**C. Medical Causation.**

Both parties have moved for partial summary judgment on the issue of medical causation. Plaintiff seeks a ruling that the failure of the Inteplast bag was the cause of her medical problems as a matter of law. Defendants seek a ruling that, as a matter of law, Plaintiff cannot establish medical causation. The parties' arguments on medical causation are grounded on evidence showing that Plaintiff has filed two prior lawsuits seeking damage for the same medical condition alleged here – RSD – even though RSD allegedly is an incurable nerve condition.[53]

Defendants argue that since Plaintiff has filed other lawsuits in the past claiming RSD, she would be required to present expert medical testimony regarding how the incident here reaggravated the condition in order to establish causation. Defendants contend that Plaintiff cannot offer this expert testimony because the only experts that she disclosed -- her treating physicians -- must be excluded under Rule 26 of the Federal Rules of Civil Procedure. Rule 26 requires a party "disclose to the other parties the identity of any witness it may use at trial to present expert evidence

---

[52] Petition for Damages filed by Gertrude Savoy, exhibit 1 to Document 1.
[53] Plaintiff's Pretrial Statement and Witness and Exhibit List, Document 42.

15

under Federal Rule of Evidence 702, 703, or 705."[54] Rule 26 categorizes these witnesses for purposes of disclosure requirements into those expert witnesses who are retained or specially employed to give expert testimony and those who are not retained or specially employed but may provide expert testimony.[55] Since Congress amended Rule 26 in 2010, Rule 26(a)(2)(C) creates a separate requirement that expert witnesses who do not provide written reports, such as treating physicians, must submit a disclosure stating: (i) the subject matter on which the witness is expected to testify under Federal Rules of Evidence 702, 703, and 704; and (ii) the facts and opinions to which the witness is expected to testify. In her Initial Disclosures, Plaintiff listed her treating physicians as witnesses who "may" testify at trial regarding "treatment, treatment costs, prognosis, disability, future treatment and causation."[56] In her Pre-trial Statement filed on June 25, 2019, Plaintiff stated that she may call "[a]ny and all of Plaintiff's healthcare/medical providers identified in discovery (who will also testify in an expert capacity)."[57] These are the only disclosures that have been made regarding any testimony from any treating physician. According to Defendants, if that testimony is excluded under Rule 26, Plaintiff cannot establish medical causation.

A request to exclude certain testimony should have been brought in a timely-filed motion *in limine*. The deadline for filing motions *in limine* was June 7, 2019 and no request to exclude expert evidence was filed prior to that deadline. Moreover, Plaintiff points to her own deposition testimony discussing her injury as well as medical records showing that she was treated for pain and RSD after the incident in question. The Court finds that this evidence is sufficient to create a genuine issue of material fact as to medical causation.

---

[54] Fed. R. Civ. P. 26(a)(2)(A).
[55] See Fed. R. Civ. P. 26(a)(2)(A),(C); Advisory Comm. Note 2010.
[56] Doc. 10.
[57] Doc 42, p. 4.

With respect to Plaintiff's motion, she argues that she is entitled to a finding that the incident in question caused her injuries as a matter of law based upon the presumption of causation provided in *Housley v. Cerise*, 579 So.2d 973 (La. 1991).[58] *Housley*, however, does not provide grounds for summary judgment because courts have held that the *Housley* presumption does not apply at the summary judgment stage.[59] Without that presumption, Plaintiff has not met her summary judgment burden of establishing medical causation as a matter of law.[60]

For these reasons, the Court finds that there are genuine issues of material fact regarding medical causation and neither side is entitled to summary judgment on that issue.

## IV.
### CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment [doc. 36] filed by Inteplast is GRANTED. The Motion for Summary Judgment [doc. 62] filed by Inteplast and Kroger on the issue of medication causation, Plaintiff's Motion for Partial Summary Judgment on Medical

---

[58] The Louisiana Supreme Court has explained the *Housley* presumption as follows:
> In a personal injury suit the test for determining the causal relationship between the incident in question and the subsequent injury is whether the plaintiff proved through medical testimony that it was more probable than not that the subsequent injuries were caused by the accident, in this case, a pedicure. A plaintiff may be aided in establishing this burden by the legal presumption that a medical condition producing disability is presumed to have resulted from an accident if, before the accident, the injured person was in good health, but shortly after the accident, the disabling condition manifested itself—providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition. In order to defeat this presumption, the defendant must show some other particular incident caused the injury.

*Detraz v. Lee*, 950 So.2d 557 (La. 1/17/07).
[59] *Turner v. Knight Transportation, Inc.*, 2016 WL 8253803 (W.D. La. 3/24/16); *Miller v. Mr. B's Bistro, Inc.*, 2005 WL 2036780 (E.D. La. 2005).
[60] Even if the *Housley* presumption was available at the summary judgment stage, there are least two flaws in Plaintiff's reliance on the presumption at this stage. First, Plaintiff had RSD prior to the incident in question. Accordingly, even if her symptoms had not been present at the time of the accident, the Court would be hesitant to find that she was in "good health" with regard to this condition, which is a requirement for the application of the presumption. *See Venissat v. St. Paul Fire & Marine Ins. Co.*, 968 So.2d 1063 (La. App. 3 Cir. 8/15/07) (finding the *Housley* presumption was not appropriate even where there was a six-year gap between the last treatment for neck complaints and the accident in issue). Second, Plaintiff would need to come forward with additional evidence to supply the requisite causal connection between the incident and the condition.

Causation [doc. 64] and the Motion for Summary Judgment [doc. 65] filed by Kroger are **DENIED**. A separate order in conformity with these reasons will be entered into the record.

THUS DONE in Chambers on this 7th day of January, 2020.

Robert R. Summerhays
United States District Judge